**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Terrance L. Kinnard, :
:
      Plaintiff, :
:
v. : CIVIL ACTION NO.
: 1:08-cv-01824-JOF
Robert Kelly, et al., :
:
      Defendants. :
:

## **OPINION & ORDER**

This matter is before the court on Plaintiff's motions for default judgment [22] and [23] and Plaintiff's motion for summary judgment [25].

This diversity action arises out of a dispute between two entities involved in the promotion of several R. Kelly concerts. Kelly is an internationally known recording artist. Previously, this court granted Plaintiff's motion for service by publication, and Plaintiff published service in both the *Chicago Daily Law Bulletin* and the *Fulton County Daily Report*. D.E. [9]-[11]. Kelly filed a motion to dismiss for lack of personal jurisdiction, which the court granted. D.E. [21]. In that same order, the court noted that none of the other Defendants answered Plaintiff's service by publication, and the court then directed Plaintiff

to move for default judgment under Fed. R. Civ. P. 55(b) against those remaining Defendants. Plaintiff so moved.

Upon reviewing Plaintiff's motions for default judgment, the court found that Plaintiff had not given the court the benefit of any briefing as to whether Plaintiff's causes of action were supported by Plaintiff's complaint. The court thought it beneficial for Plaintiff to file a motion for summary judgment briefing any of the causes of action set forth in the complaint upon which Plaintiff wished to proceed. The court instructed Plaintiff to file such a motion and to include with it a statement of material undisputed facts, which related to liability for the causes of action on which Plaintiff moved, and which related to the facts used to calculate damages.

Plaintiff filed a motion for summary judgment, as directed, but the substantive portion of the motion was a mere two pages long. Plaintiff did not delineate which causes of action he was proceeding upon, and what he refers to as his statement of material fact[1] only includes the following:

a. That Defendants . . . through a material misrepresentation took one hundred twenty thousand dollars ($120,000) from the plaintiff.

b. That the Defendants . . . made false or misleading written statements with the intent to obtain the plaintiff's property and the wrongful conduct by each Defendant was undertaken with malice and fraud with the purpose of causing injury to the plaintiff.

---

[1] The court notes that Plaintiff labels this his statement of material facts, but the court will not consider legal conclusions as fact.

2

> c. That the Defendants . . . exerted unauthorized control over the one hundred twenty thousand dollars ($120,000) belonging to the Plaintiff and the Defendants used it for an unauthorized purpose, depriving the plaintiff of its value or use.

Docket Entry [25]. Plaintiff then requests that he be granted summary judgment jointly and severally against all Defendants for "treble damages for civil conversion and his costs expended in this action." *Id*. Although Plaintiff failed to clearly state which counts he wished to proceed upon, the language in Plaintiff's three statements of material fact tracks the language from his complaints for fraud, deception, theft, and conversion. Plaintiff does not discuss or reference his claim for corrupt business influence, and therefore, as Plaintiff has chosen not to proceed with that claim, the court will not address it.

Upon their default, Defendants admit the well-pleaded allegations of fact found in Plaintiff's complaint. *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2] The defendant is not deemed to have admitted facts that are not well-pleaded or to admit conclusions of law. *Id*. A default judgment is not automatically granted, and "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Id*. The

---

[2] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

3

court must determine whether the facts alleged in Plaintiff's complaint sufficiently demonstrate Defendants' liability and the amount of damages.[3]

Plaintiff, Terrance Kinnard d/b/a T. Kinnard Entertainment, is an Indiana resident. Defendant Leonard Rowe is a Georgia resident, employed as a concert promoter. Defendant Rowe Entertainment Inc., a corporation, also provides concert promotion services, and it seems to be owned by or run by Defendant Leonard Rowe. In particular and relevant to this litigation, Defendant Leonard Rowe and Defendant Rowe Entertainment (the Rowe Defendants) provided concert promotion services for R. Kelly. Defendant Simms is an accountant for and employee of the Rowe Defendants. In October of 2007, the Rowe Defendants contacted Plaintiff regarding the possibility of becoming a fifty percent (50%) partner with the Rowe Defendants for the purpose of promoting one show on the "R. Kelly Double-Up Tour." That show was to occur in Indianapolis, Indiana on Saturday, December 8, 2007.

On October 17, 2007, Plaintiff and Defendants executed a contract for the Indianapolis concert. Under the contract, Plaintiff was to "invest . . . to" Defendant Rowe Entertainment, Inc. $120,000. Complaint, ¶ 20. Plaintiff made the required payment. Plaintiff then made a trip to Atlanta, Georgia to confirm the receipt of the proceeds and to further discuss the framework of the partnership with the Rowe Defendants. Plaintiff and

---

[3] The court notes it will not consider, as fact, any legal conclusions asserted by Plaintiff in his complaint or motion for summary judgment.

4

Defendant Leonard Rowe discussed the details of the business arrangement over lunch. After Plaintiff went back to Indiana, the parties kept in daily contact regarding the details and execution of the concert. Sometime before November 16, 2007, the Rowe Defendants insisted Plaintiff come see a concert in Atlanta, occurring November 16, in order to "view how extraordinary the concert was executed." Complaint, ¶ 30. The Rowe Defendants provided Plaintiff with concert tickets and access to the backstage, VIP, and production areas. Between the Atlanta concert and the Indiana concert, the parties again maintained daily communications regarding promotion of the Indiana concert. "[I]n performance of the contract, tickets were sold, additionally more advertising via radio and television was purchased along with the printed materials (above the original contract term of $120,000.00[,] which was to represent the total Partnership Investment)." Complaint, ¶ 34. On the date of the Indiana concert, December 8, 2007, the parties were supposed to have a meeting around 1:00 p.m. at the concert venue. The Rowe Defendants repeatedly rescheduled the meeting and then never showed.

The contract provided that Plaintiff would be able to attend or participate in the accounting of all the proceeds and expenditure for the concert, called the "settlement." The settlement for the Indiana concert occurred at the concert venue the night of the concert. Defendant Simms performed the settlement for the Rowe Defendants. Defendants attempted to prevent Plaintiff from entering the management office where the settlement was taking

5

place, and Plaintiff was only allowed in after the accounting was completed. The venue gave Defendant Simms some unknown amount of money, but Defendant Simms reported that the concert produced a net loss to all the partners in the venture, including Plaintiff. However, Defendants told Plaintiff they would allow him to "roll over" the losses into another concert, one taking place in Jacksonville, Florida. Defendants promised Plaintiff a fifty percent (50%) partnership interest in the Florida concert, scheduled for December 30, 2007.

Defendants requested that Plaintiff meet them in Charleston, South Carolina on December 28, 2007. The parties met, and "Defendant," presumably Defendant Rowe, reiterated that Plaintiff was a partner in the Florida concert, and the parties scheduled a meeting in Jacksonville just prior to the concert start time. Plaintiff traveled to Jacksonville, and again, the Rowe Defendants never showed up to the meeting and did not answer Plaintiff's calls. Defendant Simms performed the settlement for the Florida concert, and Plaintiff was again prevented by Defendants from entering the management office of the venue where the settlement was taking place. Plaintiff's complaint states that "based on the information received since the conclusion of the R. Kelly Double-Up Tour, the Plaintiff has learned information that would demonstrate that the Partnership Opportunities extended by all Defendants was in fact a scam." Complaint, ¶ 67. Plaintiff also alleges that a partnership interest in the concerts was not actually available as no such partnership interest existed, and Defendants knew no partnership interest was available in either of the concerts.

6

Plaintiff's motions for default judgment and motion for summary judgment request treble damages for civil conversion in the amount of $360,000.[4] Those treble damages are based upon actual damages of $120,000, the amount which Plaintiff gave to the Rowe Defendants. While Plaintiff does not state the law upon which he bases his request for treble damages, based upon its own research, the wording of the complaint, and the fact that this is a diversity action, the court concludes that Plaintiff is attempting to bring causes of action under Indiana state law. Ind. Code Ann. § 34-24-3-1 allows a person who suffers a pecuniary loss after being the victim of certain crimes to bring a civil action against the person who caused the loss for "(1) An amount not to exceed three (3) times the actual damages of the person suffering the loss. (2) The costs of the action. (3) A reasonable attorney's fee. . . .[and] (7) All other reasonable costs of collection." Plaintiff asks for each of these in his motions for default judgment. Three of the crimes covered by this statute are conversion, theft, and deception, and Plaintiff lists each of these as a count in his complaint. As Plaintiff requests treble damages for "civil conversion," the court concludes that Plaintiff was attempting to bring a civil action to recover for criminal conversion, theft, and deception pursuant to Ind. Code Ann. § 34-24-3-1. The court starts by addressing conversion.

---

[4] Although Plaintiff's complaint requested punitive damages, neither Plaintiff's motions for default judgment or summary judgment discuss or request punitive damages. As such, the court does not discuss or award punitive damages.

7

Under Indiana law, "[c]riminal conversion is committed when '[a] person[5] . . . knowingly or intentionally exerts unauthorized control over property of another person.'" *Manzon v. Stant Corp.*, 138 F. Supp. 2d 1110, 1114 (S.D. Ind. 2001).

> A person suffering pecuniary loss as a victim of criminal conversion can sue for the costs of the action, attorney's fees, and treble damages. Recovery on this theory in a civil action does not require a criminal conviction. Instead, the "claimant need only prove by a preponderance of the evidence that the criminal act was committed by the defendant." Conversion consists of two key elements. First, the claimant must prove that the control exercised over the property was unauthorized. Second, the claimant must show that the accused "was aware of a high probability that this control was unauthorized."

*Id*. at 1114 -15 (internal citations omitted). Control over the property of another is "unauthorized" where it is exerted "by creating or confirming a false impression in the other person." Ind. Code Ann. § 35-43-4-1(b)(4). Plaintiff has sufficiently pled a cause of action under this statute against the Rowe Defendants, Leonard Rowe and Rowe Entertainment. The Rowe Defendants took Plaintiff's $120,000 and exerted control over it by creating the false impression that Plaintiff would be receiving a fifty percent partnership in the Indiana concert, and thereby sharing in any profits. It is clear from the facts that the Rowe Defendants were aware that no partnership interest actually existed, and therefore, knew they were making false promises to Plaintiff. Their intent to create a false impression of the availability of a partnership interest in the concert in order to obtain Plaintiff's monetary

---

[5] Corporations can be criminally prosecuted for any offense. Ind. Code Ann. § 35-41-2-3(a).

investment is sufficiently shown by the factual allegations in the complaint. Plaintiff's motions for summary and default judgment are GRANTED against the Rowe Defendants for Plaintiff's conversion claims under Ind. Code Ann. § 34-24-3-1.

However, Plaintiff does not sufficiently allege conversion against Defendant Simms. There are two separate incidents in the present case. The first is the initial offering of the partnership in the Indiana concert. The second is the fifty percent partnership offer in the Florida concert. Plaintiff is attempting to recover the $120,000 he initially gave to the Rowe Defendants. While Plaintiff often refers to "Defendants" generally, Plaintiff does not allege that Defendant Simms had any part in offering the first non-existent partnership interest. Plaintiff only alleges that Defendant Simms conducted the settlement of the Indiana concert and that he, along with the Rowe Defendants, promised Plaintiff a partnership interest in the concert scheduled in Jacksonville. At this point, Plaintiff had already given the Rowe Defendants his money. The court is unclear as to how Defendant Simms' actions in promising Plaintiff a partnership interest in the Florida concert caused Plaintiff's injuries, as the only injury alleged by Plaintiff occurred prior to this offer. Nowhere in the complaint or motion for summary judgment does Plaintiff allege facts showing that Defendant Simms ever exerted any control over the $120,000. Therefore, Plaintiff has not sufficiently alleged "civil conversion" pursuant to § 34-24-3-1 against Defendant Simms. Because Defendant Simms had no part in causing the injury for which Plaintiff requests to be compensated, all

9

of Plaintiff's claims against Defendant Simms, conversion, theft,[6] deception,[7] and fraud,[8] fail. Plaintiff's motions for summary and default judgment are DENIED as to all claims against Defendant Simms.

The court moves onto damages, attorney fees, and costs. In a default judgment situation, a court can award damages without an evidentiary hearing where all essential evidence is already on the record or where the damages sum is liquidated. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (11th Cir.1979). Plaintiff's motions for default and summary judgment request actual damages in the amount of $120,000. Plaintiff's motion for default judgment against the Rowe Defendants also requests post-judgment interest "as provided by law." Further, Plaintiff requests treble damages for conversion, presumably pursuant to Ind. Code Ann. § 34-24-3-1. In total, Plaintiff requests $360,000 in damages

---

[6] Plaintiff has alleged no pecuniary loss arising out of Defendant Simms's actions, and therefore cannot succeed on his theft claim under Ind. Code Ann. §34-24-3-1, which covers violations of Indiana's criminal theft statute, Ind. Code Ann. § 35-43-4-2.

[7] Plaintiff has alleged no pecuniary loss arising out of Defendant Simms's actions, and therefore cannot succeed on his deception claim under Ind. Code Ann. §34-24-3-1, which covers violations of Indiana's criminal deception statute, Ind. Code Ann. § 35-43-5-3.

[8] To succeed on this claim, Plaintiff must have alleged facts showing "(1) a material misrepresentation of past or existing facts by the party to be charged, (2) which was false, (3) was made with knowledge or reckless ignorance to falsity, (4) was relied upon by the complaining party, and (5) proximately caused the complaining party injury." *Humphries v. Ables*, 789 N.E.2d 1025, 1030 (Ind. App. 2003). Again, Plaintiff has shown no injury arising out of Defendant Simms's actions.

10

plus post-judgment interest. Plaintiff has sufficiently alleged facts showing that the Rowe Defendants offered Plaintiff a fifty percent (50%) partnership in the Atlanta concert in exchange for Plaintiff providing them with a $120,000 contribution. Because Plaintiff's damages are a discernable sum capable of mathematical calculation, a hearing on damages is not required, and Plaintiff is awarded treble damages in the amount of $360,000 pursuant to Ind. Code Ann. § 34-24-3-1. Post-judgment interest is automatically applied to monetary judgments under Indiana law. *See* Ind. Code Ann. § 24-4.6-1-101 *et seq*. *See also Olcott Intern. & Co., Inc. v. Micro Data Base Sys., Inc.*, 793 N.E.2d 1063, 1079 (Ind. App. 2003) (noting that "a successful litigant is automatically entitled to such interest, with or without a specific court order to that effect.") (citing *Grubnich v. Renner*, 746 N.E.2d 111, 115 (Ind. App. 2001)).

Plaintiff also requests $21,061 in attorney fees. Section 34-24-3-1 of the Indiana Code does allow Plaintiff to recover a "reasonable attorney's fee." While Plaintiff is entitled to attorney fees under the statute, the court must still determine whether the requested amount is reasonable. "[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). This amount is called the lodestar. *See id.* at 1298-99. A reasonable hourly rate is determined by "the prevailing market rate in the relevant legal community for similar

11

services by lawyers of reasonably comparable skills, experience, and reputation." *Id*. at 1299. The burden is upon Plaintiff to show that the requested rate is reasonable, and "[s]atisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Id*. In support of the claim for attorney's fees, Plaintiff provides the court only with an affidavit from his counsel as evidence of reasonableness.

According to Plaintiff's counsel, Glenn Huelskamp, the fees accumulated in this action totaled $19,995 plus costs of $1,066, for a total of $21,061. Mr. Huelskamp attached to his affidavit copies of the billing statements for Plaintiff's case, which show that he billed at a rate of $465 per hour. The only evidence of reasonableness offered is Mr. Huelskamp's own opinion that the rate is reasonable, and his contention that $465 is "based on the Laffey Matrix[9] for an attorney with 20 years experience." D.E. [22-2]. However, no court in this circuit has relied upon the Laffey Matrix as reliable evidence of reasonable fees, and the Laffey Matrix is created by the United States Attorney's Office for the District of Columbia. What is reasonable in the District of Columbia is not necessarily reasonable in this case where the relevant legal community is Atlanta.[10] However, the court can rely upon its own experience to determine a reasonable fee even when faced with an inadequate fee

---

[9] This is a matrix of hourly rates for attorneys of varying experience levels prepared by the Civil Division of the U.S. Attorney's Office for the District of Columbia. *See* Laffey Matrix 2003-2014, http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_3.html.

[10] "The relevant legal community is the area in which the court sits . . . ." *Knight v. State of Alabama*, 824 F. Supp. 1022, 1028 n. 1 (N.D. Ala. 1993) (citing *Turner v. Secretary of Air Force*, 944 F.2d 804, 808 (11th Cir. 1991)).

AO 72A
(Rev.8/82)

application or fee rates which seem excessive, and the court should still award a fee where warranted. *Norman*, 836 F.32d at 1303. In the present case, the court finds that $465 per hour is not a reasonable rate in the Atlanta legal market, even for an attorney with 20 years of experience. This simple default judgment case does not involve novel questions of law or unusual facts, and there is no special skill necessary for this case. Relying on its own judgment and experience, the court finds that a reasonable rate in the relevant legal market for this kind of case is $250 per hour.

The court must now ascertain whether the hours spent on this case by Plaintiff's counsel were reasonable, and the court is to use its own billing judgment to exclude "excessive, redundant or otherwise unnecessary hours" without regard to the skill, reputation or experience of counsel. *Norman*, 836 F.2d at 1301 (internal quotations omitted). "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). In determining a reasonable number of compensable hours, the court should consider the 12 factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[11] *Id.*

---

[11] Those factors include (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional

13

Plaintiff's counsel asserts that he spent 43 hours on this case, which the court finds unreasonable. As previously stated, this case is a simple default judgment case, and despite Plaintiff's counsel's contention otherwise, this case did not involve difficult issues of either a legal or factual nature, nor was a substantial amount of time and labor required. Exercising its billing judgment, and in consideration of the *Johnson* factors, the court finds that thirty-five (35) hours is a reasonable number of hours to have been spent on this case. The lodestar then is thirty-five hours at a rate of $250 per hour, for a total of $8,750.

In conjunction with his request for attorney's fees, Plaintiff also asks to be awarded costs in the amount of $1,066, which includes the filing fee, a fee for mailing something, the flight cost for a trip to Georgia, and a district court fee.[12] The only evidence of costs expended is in the billing statement submitted by Plaintiff's counsel, and those costs only total $1,066. Section 34-24-3-1 does allow Plaintiff to recover costs, as long as the costs are reasonable. The court finds that those costs documented in the billing statement provided by Plaintiff's counsel are reasonable, and Plaintiff may recover $1,066 in costs pursuant to Ind. Code Ann. § 34-24-3-1.

---

relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

[12] In its motion for default judgment against the Rowe Defendants, Plaintiff states that "the cost of bringing this action was ten thousand ($10,000)," and Plaintiff requests to recover those costs as well. Plaintiff does not explain what factual basis exists for the request for $10,000 in costs. The $10,000 worth of costs requested by Plaintiff in its motion for default judgment is unreasonable on its face, and Plaintiff has not sustained its burden of showing that those fees are reasonable.

14

The injury claimed by Plaintiff pursuant to his claims for theft, fraud, and deception against the Rowe Defendants is the loss of the $120,000. All of his claims arise out of the same transaction. The court has already held that Plaintiff can recover that money from the Rowe Defendants pursuant to his conversion claim under Ind. Code Ann. § 34-24-3-1. Plaintiff is fully compensated for his loss. Plaintiff's other claims against the Rowe Defendants are superfluous, as Plaintiff cannot recover twice for the same wrong.

In conclusion, Plaintiff's motions for default judgment and summary judgment against Defendant Simms are DENIED [22] and [25]. Plaintiff's motions for default and summary judgment against Defendant Leonard Rowe and Defendant Rowe Entertainment are DENIED IN PART and GRANTED IN PART [23] and [25]. Plaintiff's motions for default and summary judgment are GRANTED with respect to Plaintiff's conversion claims against the Rowe Defendants brought pursuant to Ind. Code Ann. § 34-24-3-1, and Plaintiff is awarded $360,000 in damages, $8,750 in attorneys fees, and $1,066 in costs. Plaintiff's motions for default and summary judgment are DENIED with respect to all other claims against the Rowe Defendants. The Rowe Defendants are DIRECTED to pay Plaintiff $360,000 in damages, $8,750 in attorneys fees, and $1,066 in costs.

**IT IS SO ORDERED** this 2nd day of March 2010.

/s J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)